IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYANT COLLINS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | No. 06 C 1516 |
| ) | |
| NICHOLAS K. PONTIKES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs brought this action against J.P. Morgan Chase Bank, N.A. (J.P. Morgan Chase) and former directors and officers of Comdisco, Inc. (collectively defendants), raising twelve counts. Plaintiffs filed this action in the Circuit Court of Cook County on January 27, 2006, and defendants filed their notice of removal on March 17, 2006. Seeking to remand the case to state court, plaintiffs argue that removal was improper because it was untimely and the complaint does not present a substantial federal question. For the following reasons, plaintiffs' motion is granted. Specifically, even though the motion to remand was timely, plaintiffs' complaint does not arise under federal law.

Plaintiffs are former employees of Comdisco, Inc., who, together with other Comdisco employees, purchased over $100 million of Comdisco stock under a shared investment plan (SIP) in January and February 1998. Presently the stock has nearly zero value. Plaintiffs allege that defendants induced and coerced them to purchase the Comdisco stock, which ultimately inflated the price of Comdisco's stock and enabled the company to raise over $100 million without recognizing a coordinate liability on its balance sheet. Plaintiffs purchased the stock by borrowing sums of money from J.P Morgan Chase, who allegedly devised the SIP

program in concert with Comdisco directors. In their complaint, plaintiffs allege the following claims: breach of fiduciary duty; common law fraud; negligent misrepresentation; violation of California Corporate Code §§ 25401, 25403, 25504, 25504.1; breach of contract and covenant of good faith and fair dealing; declaratory judgment; Illinois Consumer Fraud and Deceptive Trade Practices; and Illinois Securities Fraud.

We turn first to plaintiffs' claim that the case should be remanded to state court because defendants' notice of removal was untimely. Section 28 U.S.C. § 1446(b) specifies that the notice of removal must be filed within 30 days after the defendant receives a copy of the complaint, or within 30 days after defendant is served with the summons, provided that the complaint is filed in court and is not required to be served on the defendant. In <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 342 (1999), the Supreme Court considered the issue of whether the 30-day removal period commenced upon mere service of the complaint or whether the defendant was entitled to service of official process. The court concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347-48. The court described service of official process as "fundamental" (*id.* at 350), and noted that unless the named defendant waives service, "the summons continues to function as the *sine qua non*" that directs a defendant to participate in a civil action or forfeit certain rights (*id.* at 351).

Thus, after <u>Murphy Bros.</u> rejected what had been known as the "receipt rule," to determine when the time period for removal begins to run, it is critical to identify precisely when a named defendant is officially summoned to appear in an action. In an action involving

multiple defendants, under the "first-served defendant" rule, the 30-day time period commences with service on the first defendant entitled to remove. Phoenix Container, L.P. v. Sokoloff, 83 F. Supp. 2d 928, 932 (N.D. Ill. 2000) (quoting Scialo v. Scala Packing Co., 821 F. Supp. 1276, 1277 (N.D. Ill. 2000); Shepp v. Columbia College Chi., 2006 U.S. Dist. LEXIS 30175, *4-5, 2006 WL 1156387 (N.D. Ill. 2006).

Defendants claim that the notice of removal, filed on March 17, 2006, was timely because plaintiffs first effected service on February 15, 2006. Plaintiffs riposte that on January 28, 2006, their counsel asked William Raleigh, counsel for seven individual defendants, if he would accept service on behalf of his clients. Later that day, Raleigh responded that it "will not be a problem" with respect to the five defendants who were Illinois residents, but that he would have to weigh jurisdiction issues on behalf of the two out-of-state defendants *(see* plfs. reply. ex. A.) In their reply brief plaintiffs argue that Raleigh's agreement to accept service on behalf of several clients constituted a waiver of service and consequently, under Murphy Bros., the time for removal began to run as soon as Raleigh received a copy of the complaint on February 2, 2006 (plfs. motion ¶ 12). Plaintiffs' contention that Raleigh's agreement to accept service was actually a waiver of service under Murphy Bros. fails on several grounds.

In their motion to remand plaintiffs once mention waiver, and only in the context of citing Murphy Bros. (¶ 6). At first glance, it seems that plaintiffs have waived the waiver of service argument. *See* In re Sulfuric Acid Antitrust Litigation, 235 F.R.D. 407, 430 n.18 ("Arguments raised for the first time in a reply brief are waived, including waiver arguments, themselves"). However, it also appears that plaintiffs consider an agreement to accept service, which they focused on in their motion, as tantamount to a waiver of service. Plaintiffs fail to present any argument or case law that explains how an attorney's agreement to accept service

on behalf of a client amounts to a waiver of service.

Authorized acceptance of service and waiver of service may have the same effect from the individual defendant's perspective. In both instances the individual defendant does not receive service. However, in the former, the plaintiff still effects service—only to the defendant's counsel instead of to the defendant. Thus, when an attorney is authorized to accept service on behalf of his client, the plaintiff need not serve the individual defendant, but, absent any additional waiver agreement, service is made upon the defendant's attorney.[1]

The federal rules set forth specific procedures governing waiver of service. *See* FED. R. CIV. P. 4(d). There is no indication that the parties engaged in these procedures. Rather, we have only a brief e.mail exchange in which plaintiffs' counsel asked defense counsel to accept service on behalf of his clients, not if he would waive service. Plaintiffs, or perhaps even all parties, may presume that an informal agreement to accept service effectuated a waiver of service, but without evidence showing compliance with Rule 4(d), we cannot conclude that there was a formal and effective waiver of service. Moreover, if defense counsel Raleigh truly waived service, then plaintiffs would not have sent seven individual summonses and seven complaints on February 23, 2006, in response to Raleigh's February 22 letter, in which he confirmed informing plaintiffs' counsel that he would accept service on behalf of all seven of

---

[1] Courts have, both traditionally and recently, treated authorized acceptance of service and waiver of service, as related but distinct concepts. *See* Goldey v. Morning News of New Haven, 156 U.S. 518, 521 (1895) ("It is an elementary principle of jurisprudence that a court of justice cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction, except by actual service of notice within the jurisdiction upon him or upon someone authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service"); Oncology Therapeutics Network Joint Venture, L.P. v. Olympia Fields Internal Medicine Associates, S.C. (Inc.), 2003 WL 21183850, *3 (N.D.Ill. 2003) (distinguishing a decision on the grounds that it focused on acceptance of service, not waiver of insufficient service).

his clients (def. ex. D-ex. 1, 2). If Raleigh had waived service on January 28, then plaintiffs' counsel would have objected to Raleigh's February 22 letter, and asserted the prior waiver of service. As we find no waiver, Raleigh's clients were served upon receipt of the summonses on February 23. Under Murphy Bros., the time to remove did not commence upon "mere receipt of the complaint" on February 2.

The 30-day period for removal began to run when the first defendant entitled to remove received the summons and complaint. On February 14, 2006, counsel for defendant JP Morgan Chase told plaintiffs' counsel that he would accept service on behalf of the defendant after receiving the complaint and process (def. ex. B, ¶ 6). The next day plaintiffs' counsel provided defense counsel with a summons and complaint (*id.*, ex. 1). Counsel for individual defendants John Slevin and Jon Vosicky informed plaintiffs' counsel that he would accept service on behalf of his clients by filing an appearance, which was filed on February 15 (def. ex. C, ¶ 6). A letter from defense counsel, dated February 17, 2006, confirms February 15 as the date when service was accepted (*id.*, ex. A). An agreement to accept service is just that, an agreement. Actual acceptance does not occur until service is received. Further, if plaintiffs objected to February 15 as the date of service (as opposed to February 14), then defense counsel's February 17 letter would have drawn a quick response and correction from plaintiffs. But there is no such response in the record. The earliest date on which a defendant entitled to remove received both summons and complaint was February 15, 2006. The 30-day removal clock began to run on that date, and therefore defendant's notice of removal, filed on March 17, 2006, was timely.

A synopsis of the procedural history aids in the analysis of plaintiffs' second ground for remand – the absence of federal question jurisdiction. JP Morgan Chase provided an SIP,

pursuant to which the bank extended loans to Comdisco employees for the purchase of Comdisco shares. Comdisco agreed to enter the SIP, and also agreed to guarantee the loans. A number of Comdisco employees participated in the SIP. Comdisco entered Chapter 11 bankruptcy proceedings in July 2001. JP Morgan Chase then sought to collect the outstanding loans, the principal of which totaled over $109 million. During the bankruptcy proceeding, certain participants in the SIP attempted to intervene and obtain a declaratory judgment against JP Morgan Chase. The bankruptcy court ultimately determined that the intervenors lacked standing to challenge the legality of the bank's loans because the relevant securities laws ("Regulation U", promulgated under section 7(d) of the Securities and Exchange Act of 1934) did not provide a private cause of action. The district court affirmed that holding. Blair v. Bank One, N.A., 307 B.R. 906 (N.D. Ill. 2004).

The SIP participants then filed a class action complaint in the Northern District of California, seeking relief under section 10(b) and Rule 10(b)-5 and section 20(a) of the Exchange Act, and further alleging breach of fiduciary duty, fraud, negligent misrepresentation, violation of California Corporate Code § 25401, and breach of warranty. Plaintiffs then amended the complaint to add several claims, including additional violations of the California Corporate Code. On July 25, 2005, the class action complaint was transferred to Judge Andersen in this district. The class allegations were eliminated in a second amended complaint, filed on December 30, 2005. Shortly thereafter, on January 5, 2006, plaintiffs voluntarily dismissed their complaint. Then on January 27, 2006, plaintiffs filed their complaint in the Circuit Court of Cook County. As noted above, defendants removed the action to this court on March 17, 2006.

In their notice of removal, defendants invoked 28 U.S.C. § 1441(b), which provides that

when a civil action is one "of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States [it] shall be removable without regard to the citizenship or residence of the parties." The removal statute is to be narrowly construed, and any jurisdictional doubts are resolved in favor of remand. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir.1993). Defendants, the removing parties, have the burden of establishing federal jurisdiction. Application of County Collector of Winnebago, Ill., 96 F.3d 890, 895 (7th Cir.1996). Defendants argue that the action is removable because plaintiffs' claims necessarily raise the federal issue of whether the loans violated federal law. Plaintiffs contend the claims are based on grounds that are independent of federal law.

Each claim in plaintiffs' complaint is nominally either a state common law or statutory law claim. Even though no claim expressly presents a federal cause of action, the action may still be removable under the "variety of federal 'arising under' jurisdiction" that encompasses "state-law claims that implicate significant federal issues." Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 125 S. Ct. 2363, 2366-67 (2005). In Grable, the IRS seized property owned by the petitioner to satisfy a tax deficiency. The respondent purchased the property and the IRS sent the petitioner notice of the sale and of the petitioner's right to redeem the property. The petitioner did not exercise that right, and instead, five years later, brought a quiet title action in state court. He claimed that the notice provided by the IRS failed to comply with federal law. The respondent removed the case to federal court on the grounds that the petitioner's "claim of title depended on the interpretation of the notice statute in the federal tax law." Id. at 2366. Concluding that the action was removable, the Supreme Court emphasized that whether the petitioner "was given notice

within the meaning of the federal statute" was an essential element of the quiet title claim, and that the "meaning of the federal statute is actually in dispute." *Id.* at 2368. Also warranting removal was the fact that the interpretation of the relevant federal notice provision directly affected the government's interest and would govern its future conduct.

Grable provides important factors to consider when determining whether a state law claim implicates significant federal issues to the extent necessary to support removal. More is required than only a contested federal issue. The federal issue must be "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 2367. The Court phrased the inquiry in these terms: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.

This case does not warrant federal jurisdiction. Plaintiffs' claims do not necessarily raise the federal issue presented by defendant – whether the loans issued by JP Morgan Chase violated federal law and regulations. It is true that the allegedly illegal nature of the SIP program is an aspect of plaintiffs' claims, and that plaintiffs allege that defendants misrepresented the nature of the loans by telling plaintiffs that they were not margin loans (plfs. cplt. ¶¶ 28, 41, 43, 61, 62). But it is equally true that a number of grounds unrelated to the legality of the loans also support plaintiffs' claims that defendants misrepresented the nature of the SIP program.

For example, plaintiffs claim that defendants made a number of misrepresentations that induced their participation in the SIP program. Defendants allegedly stated that they would investigate each plaintiff's ability to borrow a large sum of money, but defendants never

intended to make, and never made, such an inquiry (*id.*, ¶¶ 45, 46). Plaintiffs claim that defendants used coercive tactics to obtain plaintiffs' participation in the program over a 48-hour period, during which defendants allegedly prevented plaintiffs from discussing the plan with each other or with legal counsel (¶¶ 26, 39, 40). Defendants purportedly told plaintiffs that their futures with Comdisco depended on joining the plan (¶¶ 26, 48). Defendants allegedly failed to inform plaintiffs that other SIP plans involved considerably less risk and also allowed prospective participants to consult with others in non-coercive environments (¶¶ 26, 47). Plaintiffs assert that defendants inflated the price of the shares they purchased and failed to inform plaintiffs that the shares were overpriced (¶¶ 51, 58, 62). Defendants allegedly did not disclose to plaintiffs that the SIP program was structured to prevent plaintiffs from selling their shares (¶¶ 29, 50). Defendants purportedly misrepresented that they would protect plaintiffs against any losses resulting from the SIP program (¶ 58). Plaintiffs further alleged that defendants failed to disclose the risks of the SIP program, including that if plaintiffs sold the shares within three years of acquisition, then they would have to turn over 50 per cent of the profits to Comdisco in addition to bearing 100 per cent of the risks (¶ 29). This structure allegedly forced certain employees to remain at Comdisco, and gave the company greater leverage over them (¶¶ 31, 50).[2]

In light of these allegations, plaintiffs' abilities to prevail does not depend solely on the

---

[2] That these allegations may echo and even mirror allegations set forth in the now voluntarily dismissed federal action does not mean that the state court action is merely the federal court action in camouflage, as defendants insist it to be. The fact that misrepresentations about Comdisco's intent behind the SIP could support a section 10(b) claim does not mean that the allegations are exclusively "federal." Moreover, there is no indication that any federal statutory disclosure provisions preclude plaintiffs from alleging, under common law and state statute, duties to disclose facts such as the relative risk of the Comdisco SIP and the company's intent to gain leverage over participating employees. Those duties do not exist by virtue of federal law. *See* Hays v. Cave, 446 F.3d 712, 713 (7th Cir. 2006) (discussing how a breach of fiduciary duty claim against an ERISA fiduciary is removable even if the complaint does not mention ERISA).

legality of the loans. For example, plaintiffs allege that defendants "lulled the SIP participants into a false sense of security that both the Board of Directors and Bank One had made substantial, meaningful and sophisticated individual valuations of the capacity of each employee to assume the respective SIP loans" (*id.*, at ¶ 46). Plaintiffs may thus show that they would not have participated in the SIP program had they known that defendants failed to ensure that they were financially capable of taking on the loans. That showing does not depend on the legality of the loans pursuant to 15 U.S.C. § 78g(d).

Plaintiffs primarily support count I, in which they allege breach of fiduciary duty against the board of directors, with allegations of the coercive environment that defendants created to induce plaintiffs' participation in the SIP program and ultimately gain greater control over the plan participants (*id.*, ¶¶ 69, 70, 73, 74). Count II, which alleges fraud, does state that defendants misrepresented the "illegal margin nature of the SIP loans," but it also sets forth a number of other misrepresentations, such as the relative risk of the Comdisco SIP, the use of the SIP program to manipulate the stock price, and defendants' false pledge to evaluate each participant's financial suitability (¶ 81). Similarly, count III, which alleges negligent misrepresentation, states that defendants had a duty to inform plaintiffs about the SIP legalities, but it also asserts a duty to disclose the true value of the stock, the relative risks of the Comdisco SIP, and the true intent of the SIP program (¶¶ 87, 88).

The legality of loans, the federal issue that defendants identify, is not a necessary element of the state law claims, unlike the claims raised in Mid America Title Co. v. Chicago Title Ins. Co., 1998 WL 130010 (N.D. Ill. 1988), defendants' primary case. In Mid America, the complaint alleged that the defendant's conduct "violated the Real Estate Settlement Procedures Act and *therefore* constitutes" violations of state law. *Id.* at *1 (emphasis in

original). Similarly, in <u>Grable</u>, the "only legal or factual issue contested in the case" was the meaning of the federal statute. In contrast, plaintiffs do not rest solely on an alleged violation of federal law. Defendants cannot establish federal jurisdiction by reading out of the complaint independent state law grounds that support the claims. Further, any disputes regarding the legality of the loans are not substantial because they are alternate arguments for relief. *See* <u>Samuel Trading, LLC v. Diversified Group, Inc.</u>, 420 F. Supp. 2d 885, 891 (N.D. Ill. 2006).

Moreover, we are not presented with a pure issue of law that will affect future cases that involve Regulation U in the same manner that the interpretation of 26 U.S.C. § 6335 in <u>Grable</u> governed future cases. The claims here, particularly those alleging defendants' misrepresentations regarding the relative risks of the Comdisco SIP, the inflation of the stock, and the coercive environment, are more "fact-bound and situation-specific" (<u>Empire Healthchoice Assur., Inc. v. McVeigh</u>, 126 S.Ct. 2121, 2137 (2006)), with limited future application.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 17, 2006.